RENDERED:  AUGUST 7, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0648-MR

DANA HAL MADDOX; ALYSSIA
NOELLE MADDOX; AND
KIMBERLY ANN MADDOX                                          APPELLANTS


                          APPEAL FROM JACKSON CIRCUIT COURT
v.                        HONORABLE OSCAR G. HOUSE, JUDGE
                          ACTION NO. 23-CI-00086


BERNIE BRUMAGEN; BETTY VAN
WINKLE; RICKY BRUMAGEN;
SUSAN PRICE; AND WILLIAM
BRUMAGEN                                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND A. JONES;
JUDGES.

CALDWELL, JUDGE:  Dana Hal Maddox, Alyssia Noelle Maddox, and Kimberly

Ann Maddox ("the Maddoxes") appeal an Order of the Jackson Circuit Court ("the

circuit court") granting summary judgment in favor of Bernie Brumagen, Betty

Van Winkle, Ricky Brumagen,[1] Susan Price, and William Brumagen ("the Brumagens") which determined the Brumagens had a right to continue burials in a private family cemetery. Additionally, the Maddoxes appeal a finding in the Order that the statement in the deed that the property was "subject to that Cemetery, and the access road thereto" meant that the Cemetery had been excepted and reserved from conveyance. After careful review, we affirm.

## FACTS AND PROCEDURAL HISTORY

This case concerns a dispute as to burial rights in the Brumagen, Abrams, Hayes Cemetery,[2] a small family graveyard situated in Clover Bottom, Jackson County, Kentucky. The Maddoxes are the owners of a tract of real property where the cemetery is located, which they purchased in 2023.

The Brumagens are persons who each have relatives buried at the cemetery and "some, if not all of the [Brumagens], plan to be buried" there. Record on Appeal ("R.") at 2. The deed reflects that the Maddoxes purchased the property on March 28, 2023. Undisputed evidence depicts monuments for burials that occurred at the site as early as 1912 and, prior to the Maddoxes' purchase, as

---

[1] Ricky Brumagen passed away on April 7, 2025, and there was no substitution of his estate under Kentucky Rules of Appellate Procedure 8.

[2] The cemetery is also referred to in the record as the "Hayes/Brumagen Cemetery."

-2-

recently as 2022.[3]  Photographs entered into evidence show at least two double headstones, with one side containing only a name and date of birth, marking lots where people ostensibly intended to be buried beside loved ones following their own deaths.  One of these double headstones bears the name of Appellee Bernie Brumagen.  Bernie's wife, who died in 2017, is buried beneath the other side of the double headstone.  The record indicates Bernie's father was buried in the cemetery about 50 years ago.  His grandfather and grandmother, "as well as a host of other relatives" are also buried in the cemetery.  R. at 2.

The Maddoxes purchased the tract from the Estate of Mary King Abrams ("the Estate") on March 28, 2023.  In a duly recorded deed, the description of the property that was conveyed is as follows:

> [b]eing all of Parcel "B" (14.00 acres), as shown on that "Boundary Retracement for Mary King Abrams (Heirs)" recorded December 12, 2022, and of record in Plat Cabinet B, Slide 404, in the Jackson County Clerk's Office, reference to which is hereby made for a more particular description, and attached hereto.
>
> There is excepted and reserved from the property hereby conveyed a One Sixth (1/6) undivided interest in the mineral rights, same having been reserved in Mesne Conveyances.
>
> This conveyance is also subject to that Cemetery, and the access road thereto, shown on the Plat of record in Plat Cabinet B, Slide 404.

_____

[3] Photos attached to an affidavit of Bernie Brumagen show the headstone of Jeffery Lynn Brumagen, who died on May 4, 2022, in the cemetery.

R. at 5.

As indicated, the "Boundary Retracement for Mary King Abrams (Heirs)" plat of record was attached to the deed. The plat contained notations of a surveyor indicating it had been produced about 3 months prior to the conveyance, in December of 2022. Within the boundary lines outlining the 14-acre plat, a smaller enclosed boundary of less than a half-acre, per the included graphic scale, is depicted and labeled "fenced in cemetery." R. at 8. A pair of parallel dotted lines leading from the boundary line of the cemetery to KY-1955 are labeled "gravel drive." *Id*.

The instant action was initiated a few months after this conveyance, when, in July of 2023, the Brumagens filed a complaint in the circuit court against the Maddoxes. In that Complaint, the Brumagens alleged they had been wrongfully denied access to the cemetery after the Maddoxes, shortly upon taking title to the parcel, erected a locked gate at the entrance of the access road, and refused to give them a key. Attached to the Complaint was a photograph of a sign announcing that access to the cemetery required a request to be made 48 hours in advance and that the cemetery would be closed from June 10th through June 17th of 2023.

The Brumagens' Complaint sought "a temporary and thereafter permanent restraining order and injunction requiring the [Maddoxes] to remove the

-4-

gate, chain and lock and to permit the [Brumagens] and those similarly situated to visit and maintain said cemetery, and utilize the access road without restriction, and to conduct additional burials in said cemetery." R. at 4.

Answering the Complaint, the Maddoxes asserted that the Brumagens had no rights as to the family cemetery because their ancestors had lost title to the real property long before:

> The ancestors of the Plaintiff, many years ago, failed to pay the property taxes on the cemetery and property and it was foreclosed on by Jackson County and made a part of the Deed and property that was purchased by and now solely owned by the Defendants. The Plaintiffs have no current interest in the cemetery, by deed, easement or otherwise, which would entitle them to have access to the property at their desire and to make any claim of continued rights to be buried in the cemetery. The Plaintiffs do not own any of the property or cemetery, nor do they own any individual burial plots or anything similar thereto.
>
> Quite simply, the Defendants solely own the land and cemetery pursuant to their deed. The Plaintiffs cannot produce any deeds, easements or any other documents showing they have any ownership or rights thereto in the cemetery.

R. at 19.

Following this, in October of 2023, the Brumagens filed a motion seeking a temporary restraining order and injunction to require that the Maddoxes provide Bernie with a key to the locked gate. A sworn affidavit of Bernie indicated that he and his daughter, Appellee Susan Price, had been unable to visit

-5-

the gravesite of Bernie's wife and Susan's mother because of the locked gate at the cemetery entrance. Additionally, the affidavit indicated that Bernie had typically maintained the gravesites of his family members but had been unable to because of the installation of the locked gate. The affidavit further indicated that:

> Before this lawsuit was filed, I met with the defendants who stated they did not want strangers going upon the cemetery property and drinking and such. I told them I understood but would like to have a key so we could visit and maintain the graves. The defendants refused this request. We would request that at a minimum we be provided with a key to the gate leading to the cemetery so we can visit and would be glad to lock the gate back when we left.

R. at 23.

The Maddoxes responded that, prior to erecting the locked gate, they had experienced trouble on the property with trespassing, criminal activity, and littering. They argued the locked gate was a reasonable safeguard and their requirement of 48 hours for entry still provided reasonable accommodation for access. The circuit court conducted a hearing on the motion and the Judge stated that it appeared the Brumagens were entitled to a key to the locked gate. The court asked the parties to attempt to execute an agreed order with terms resolving the dispute and advised that the matter could be revisited if the parties were unable to come to an agreement.

The parties could not agree upon terms and conditions for any agreed order and the Brumagens filed a subsequent motion in November of 2023, again seeking an order requiring the Maddoxes to provide a key to the gate. The motion and an attached proposed order indicated that the Brumagens would access the cemetery only during daylight hours, remove trash, and keep the cemetery in orderly condition. The following December, the Brumagens filed a motion requesting that the circuit court issue a ruling on the pending motion and, in January of 2024, the circuit court signed an order requiring the Maddoxes to provide the Brumagens with a key to the gate.

After gaining access to the cemetery, in February of 2024, the Brumagens filed a "Motion to Remove Impediments" which requested an order requiring the Maddoxes to remove posts blocking access to the cemetery. Bernie Brumagen stated, by way of affidavit, that wooden posts and logs had been placed around the entrance and on the side of the graveyard that would block and impede entry into the cemetery with a riding mower for maintenance of the gravesites. Shortly after that, an affidavit indicated, rebar posts had been placed at the cemetery entrance. The affidavit indicated the wooden posts, logs, and rebar prevented anyone with a trailer or large vehicle from turning around at the cemetery. Furthermore, the affidavit indicated that the impediments prevented the entry and use of a riding lawn mower in the cemetery, and that Bernie was still

unable to resume the mowing and maintenance of the cemetery as he had done for the prior ten years. The affidavit indicated the impediments would also prevent the entry of a hearse and necessary equipment for future burials in the cemetery. Photographs of the alleged impediments were attached.

On February 23, 2024, the Maddoxes filed combined "Motions for Summary Judgment and for Damages for the Destruction of Private Property and Response to Motion to Remove Impediments." Therein, the Maddoxes alleged that Bernie had damaged their property by removing posts from the entrance of the cemetery. They argued that they owned the cemetery and access road in fee simple; that they accordingly had the right to protect it with barriers and a fence; and, that the Brumagens had no right to continue burying relatives at the cemetery. They argued that just because former owners of the cemetery allowed people to be buried there, it did not mean that the current owners—the Maddoxes—were also required to allow future burials in perpetuity. As authority, the Maddoxes cited *Grinestaff v. Grinestaff*, 318 S.W.2d 881, 882 (Ky. 1958), which they alleged was factually on point.

On June 26, 2024, the Brumagens filed a motion for summary judgment. The Brumagens cited *Rose v. Rose*, 314 Ky. 761, 762, 237 S.W.2d 80, 80 (1951), as authority for their right to future burials. They maintained that the recorded deed put the Maddoxes on notice that their purchase of the parcel was

-8-

subject to the cemetery and access road. They argued that they were not seeking to expand the cemetery as alleged by the Maddoxes and that they had never received permission to bury relatives in the past. The Brumagens contended the presence and continuing use of the family cemetery was obvious and apparent before the Maddoxes purchased the parcel, emphasizing that Bernie Brumagen had placed a double headstone where his wife is buried and clearly planned to be buried there upon his death.

In September 2024, the Brumagens filed a "Motion for Emergency Hearing" and sought an order requiring the Maddoxes to permit the burial of Tyler Wayne Dunnaway to be buried within the cemetery. The Maddoxes responded in opposition, arguing the decedent was not a party to the proceedings and that, as title holders, they had no obligation to allow additional burials in a cemetery. The record indicates a hearing and oral arguments were conducted, after which the circuit court granted the Brumagens' request for an order allowing the burial.

In November of 2024, the Maddoxes moved for the matter to be scheduled for trial and the circuit court scheduled a trial by jury for June of 2025. In April of 2025, the Brumagens filed another motion for an emergency hearing after Ricky Brumagen died, seeking an order requiring the Maddoxes to allow his burial in the cemetery.

On April 25, 2025, the circuit court entered findings of fact, conclusions of law, and summary judgment in favor of the Brumagens ("Order"). In so doing, the court relied largely on the language noted above in the deed which stated that, "[t]his conveyance is also subject to that Cemetery; and the access road thereto[.]" The circuit court determined that the boundaries of the cemetery and access road were clearly delineated on the plat; that the phrase "subject to" demonstrated that the cemetery and access road were not conveyed to the Maddoxes; and, that the Maddoxes were placed on notice of the foregoing by virtue of the deed and the survey plat which was recorded with the deed. The court permanently enjoined the Maddoxes from interfering in any manner with visitors to the cemetery, including future burials and upkeep of the cemetery. The judgment held that the Brumagens, along with:

> their heirs and successors, have the right to conduct burials and interments within the cemetery boundary as well as visitation, services, gathering of family members and friends, maintenance and all acts consistent therewith, and for all purposes consistent with cemetery use.
>
> The [Maddoxes], their heirs, successors and/or assigns, shall not erect any impediments along the cemetery boundary and/or access road or within the cemetery proper.

Order, p. 4. This appeal followed. Additional background will be developed as necessary.

-10-

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment under the non-deferential *de novo* standard, as the Kentucky Supreme Court has explained: "Appellate review of a summary judgment involves only legal questions and a determination of whether a disputed material issue of fact exists. So we operate under a *de novo* standard of review with no need to defer to the trial court's decision." *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 905 (Ky. 2013) (footnotes omitted). CR[4] 56.03 provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Kentucky case law construing CR 56.03 holds that granting summary judgment is only proper "when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (citing *Paintsville Hospital Co. v. Rose*, 683 S.W.2d 255 (Ky. 1985)). The circuit court noted this standard explicitly in its "Conclusions of Law" in the Order. Furthermore, the circuit court noted

---

[4] Kentucky Rules of Civil Procedure.

-11-

guidance in *Steelvest* that a court deciding a motion for summary judgment "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." Order, p. 4 (quoting 807 S.W.2d at 480). Moreover, the circuit court further cited Kentucky case law regarding the practicalities of resolving summary judgment motions:

> In reviewing motions for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party, and summary judgment should be granted only if it appears impossible for the nonmoving party [to] produce evidence at trial warranting a judgment in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). Initially the movant bears the burden of establishing that no material facts exist. Thereafter, the burden is then upon the party opposing the motion. *Hubble v. Johnson*, 841 S.W.2d 169 (Ky. 1992); *Hibbits v. Cumberland Valley National Bank and Trust Company*, 977 S.W.2d 252 (Ky. App. 1998). The trial court "must examine the evidence, not decide any issue of fact, but to discover if a real issue exists." *Steelvest*, 807 S.W.2d at 480.

Order, p. 3-4.

Despite recognizing, as noted here, that its task was to examine the evidence solely to determine if genuine issues existed and not to make findings of fact therein, the trial court used the heading "Findings of Fact" for one section of the Order. Certainly then, this heading in the Order gives the impression that the trial court was making factual findings. Additionally, the body of the Order does

-12-

not explicitly state that the circuit court viewed the facts in the light most favorable to the Maddoxes.

However, the "Findings of Fact" in the Order themselves include the statement that "[t]he court finds that there are no material issues of fact and the [Brumagens] are entitled to Judgment as a matter of law." Order, p. 1. Furthermore, close examination of the "Findings of Fact" shows mostly determinations that are in the nature of legal conclusions, rather than any fact-finding by the circuit court. Statements which are simply recitations of facts concerning matters such as the Maddoxes' purchase of the tract from the Abrams Estate, or the existence of the cemetery, provide background which is largely undisputed.

We conclude that the trial court arrived at the correct result in resolving the renewed motion for summary judgment based upon our review of precedent, the parties' briefs, and the record. As the Kentucky Supreme Court explained in *Welch v. American Publishing Co. of Kentucky*, 3 S.W.3d 724 (Ky. 1999):

> trial judges are to refrain from weighing evidence at the summary judgment stage; that they are to review the record after discovery has been completed to determine whether the trier of fact could find a verdict for the non-moving party. *Steelvest* at 482-483. The inquiry should be whether, from the evidence of record, facts exist which would make it possible for the non-moving party to prevail. In the analysis, the focus should

be on what is of record rather than what might be presented at trial.

*Id*. at 730. Despite some language in the body of its Order which might suggest that the trial court was weighing the evidence, we construe its Opinion and Order as effectively reviewing the record after discovery was completed and determining, based upon the evidence of record, that facts did not exist which would make it possible for the non-moving party (the Maddoxes) to prevail in the case. And from our review of the record, this determination was not erroneous.

## ANALYSIS

On appeal, the Maddoxes present two arguments. In the first, they argue that the circuit court committed reversible error by including in its Order, "that the wording within the [Maddoxes'] deed that the conveyance is, 'subject to,' the cemetery and access road as shown on the recorded survey plat means that the cemetery and access road are reserved and not conveyed to the defendants." Order, p. 2.

The Maddoxes' second argument is closely related to and dependent upon the success of their first. Here, the Maddoxes argue that the circuit court erred in permanently enjoining them from interference with future burials at the cemetery by the Brumagens. This argument turns upon the premise that where a stranger purchases land containing a family cemetery within it, absent an express written easement or proof of adverse possession, any future burials by the family in

-14-

the cemetery may occur only with the express permission of the purchasers. As this premise rests upon a misunderstanding or misstatement of Kentucky law, we will examine applicable law before addressing the Maddoxes' arguments more directly.

### Burial Rights in Family Cemeteries in Kentucky

There is little statutory law in Kentucky which might provide guidance in determining the rights of burial for individuals as to a particular private cemetery. For the most part, Kentucky statutes concerning rights and obligations as to cemeteries are inapplicable to private family cemeteries. *See, e.g.*, KRS[5] 381.715. An exception is KRS 381.697(2), which obligates the legal owner of private burial grounds to protect it from uses which may result in the burial grounds being damaged or destroyed; other provisions about private burial grounds are in KRS 381.697(3)-(4). However, "private family cemeteries" are explicitly excepted from some other subsections of KRS 381.697. *See* KRS 381.697(1).

No Kentucky statute establishes a right of family members for ingress and egress to a private cemetery where their decedents or relatives are buried to visit or maintain the gravesites. Neither does any statute provide how the right to burial in a family cemetery is acquired or lost. We therefore must turn to the common law.

---

[5] Kentucky Revised Statutes.

To be sure, there is not an overabundance in Kentucky case law of published decisions concerning burial rights as to private family cemeteries. Nonetheless, Kentucky cases have long recognized that, where a purchaser acquires property with awareness of the presence of a private cemetery that a prior owner had established, that purchaser may not exercise all of the same rights of ownership in that portion they might in other realty. This is regardless of whether the instrument of conveyance contained any express reservations or exceptions:

> As to the graveyard it is very evident that appellant knew it was on the land when he purchased, and being there the law without any reservation, and inhibition in the deed, prohibits him from removing the stones that mark the resting place of the dead buried there, or of injuring and removing the inclosure around the graveyard and compels him to permit the relatives of these buried there to exercise the right of ingress and egress to and from said graveyard *on proper occasions and for proper purposes*.

*Hutchison v. Akin*, 5 Ky. Op. 373, 1871 WL 6279, at *1 (1871) (emphasis added).

In *Johnson v. Kentucky-Virginia Stone Co.*, a rule was stated that the right of a family member in a private or family cemetery in which another family member is interred, whether classified as a mere easement, license, or privilege, is not extinguishable by the owner of the fee's sale of the property to another. 286 Ky. 1, 149 S.W.2d 496 (1941).

*Haas v. Gahlinger* articulated a general rule that the right of the relatives of deceased persons in ground where a prior owner established a family

cemetery is an easement, and not a fee. 248 S.W.2d 349 (Ky. 1952). "The general

rule is that the right of the relatives of deceased persons in ground *dedicated* to

family burials is a mere easement and not a fee." *Id.* at 351 (citing *Johnson v.

Kentucky-Virginia Stone Co.*, 149 S.W.2d 496; *Brunton v. Roberts*, 265 Ky. 569,

97 S.W.2d 413 (1936); *United Cemeteries Co. v. Strother*, 332 Mo. 971, 61

S.W.2d 907 (1939) (en banc); 14 C.J.S. *Cemeteries* § 20, p. 79 (1939)) (emphasis

added). The *Gahlinger* Court discussed a "mere privilege of burial in a family

graveyard" which remained after the land was sold without reservation in the deed

for the family cemetery constituted an easement within the meaning of an

exception for "easements" in the deed's covenant against encumbrances. 248

S.W.2d 349, 351. In arriving at that rule, the *Gahlinger* Court recognized that,

under the common law of Kentucky, such an easement against the fee is created by

the establishment of a family burial plot. *Id*. By operation of law, an "easement,"

not a fee, in the land, including for burial purposes, is maintained by the family of

the deceased who established the private family burial plot.

In *Fraser v. Tenney*, this Court described the common-law rights of

the heirs of a purchaser of a family plot in a public cemetery:

> When Joseph A. Goodwin purchased the family
> plot within an established cemetery, he acquired an
> easement or license to make internments therein as he
> assigned or as he designated with the Lexington
> Cemetery. *Brunton v. Roberts*, 265 Ky. 569, 97 S.W.2d
> 413 (1936). This right of sepulture is a property right

-17-

subject to reasonable regulations by the cemetery and by the state. *Id*. and *Hertle v. Riddell*, 127 Ky. 623, 106 S.W. 282 (1907). In the absence of an assignment of sites by the purchaser, before his death, the lineal descendants or parentelic relatives of the deceased have an easement in the unused sites in ground dedicated to family burials. *Id. See also Hook v. Joyce*, 94 Ky. 450, 22 S.W. 651 (1893).

987 S.W.2d 796, 798 (Ky. App. 1998).

In a footnote to the above excerpt, we drew a distinction between how an easement for interment is created by purchase of a public family lot as opposed to purchase of realty for establishment of a family cemetery: "[i]f Joseph purchased a parcel to establish a family cemetery, he would have purchased a fee and not an easement. However, the heirs would have acquired an easement." *Id*. at 798 n.3 (citing *Gahlinger*, 248 S.W.2d 349; *Hook*, 22 S.W. 651).

Summarizing Kentucky common law as to the rights of the heirs of a decedent who purchased a family plot in a public cemetery, we stated:

The heirs are joint owners of the easement for interment. The right to possession of a lot or the right to be buried therein, is on a first-need basis (date of death), provided there is space available. We believe this is the common law which exists in Kentucky. *See* 14 Am. Jur. 2d Cemeteries, Section 26; 14 CJS Cemeteries § 28.

*Fraser*, 987 S.W.2d at 798.

Today, under the facts of the case at hand, we believe this is also the common law which exists in Kentucky regarding the rights of the heirs of a

-18-

decedent who established a family cemetery within a parcel the decedent owned.

This is consistent with the common-law right of further burial as articulated in an

oft-quoted passage from the Tennessee Supreme Court's 1911 decision in *Hines v.*

*Tennessee*: "[t]he right of burial extends to all the descendants of the owner who

devoted the property to burial purposes, and they may exercise it when the

necessity arises." 149 S.W. 1058, 1059 (Tenn. 1911). Moreover, it is fully

consistent with Kentucky case law cited by either party here as decisive to this

issue of future burial rights.

      The Brumagens cite *Rose v. Rose* as authority for their right to future

burials. 237 S.W.2d at 80. Although a remarkably terse opinion, operation of the

common-law principle implicit in *Gahlinger* and *Tenney* is plainly evident in *Rose*.

There, a property owner, who was the father of all parties to the litigation, had set

apart a portion of about 1 acre of land for a family cemetery. *Id*. Prior to his

death, that owner conveyed a tract of land to his son, G.B. Rose, which included

the family cemetery within its boundaries. *Id*. Later, G.B.'s brother, Taylor Rose,

along with other siblings, filed an action to enjoin G.B. from interfering with their

use of the family cemetery on G.B.'s land; G.B.'s siblings alleged he had

prevented them from entering the cemetery for any purposes. *Id*.

      While the conveyance contained no written reservation or exception

for the family cemetery, the *Rose* Court determined it had been established that

-19-

G.B. knew of the graveyard as well as its continuing use for burial of the dead prior to the conveyance. 237 S.W.2d at 80. *Rose* included a determination that there were "sufficient facts to show the graveyard has been dedicated for family use[.]" *Id.* (emphasis added). Ultimately, the opinion held that G.B.'s siblings, lineal descendants of a prior owner who set apart, or "dedicated," the family cemetery, had attained a right to use the graveyard for its proper purposes, which included the right to make interments of their own families therein. *Id.*

The Maddoxes argue that the case of *Grinestaff v. Grinestaff*, 318 S.W.2d 881 (Ky. 1958), modified *Rose* and is dispositive of the question of burial rights in this case. In that case, T.S. Grinestaff owned a large tract of land, upon which he had been planning to start a family graveyard. *Id.* at 882. Prior to T.S. Grinestaff's burying any member of his own immediate family in the planned graveyard, the infant son of T.S.'s brother, Roscoe Grinestaff, died. When T.S. permitted Roscoe to bury the deceased child on his land, this became the first interment on T.S.'s tract. Thereafter, T.S. fenced off a plot surrounding the deceased child's grave and the plot was used as a cemetery thereafter. *Id.*

At some point, title to the tract of land was conveyed to T.S.'s heirs, Jack Grinestaff, and others. By the time of the appeal, forty-one persons had been buried in the cemetery that T.S. established. Most people buried there were members of either T.S.'s or Roscoe's families, although some non-relatives of

either were also laid to rest in the cemetery. Any terms between T.S. and Roscoe concerning the burial of members of Roscoe's family had been lost to history. Except for a single burial, it was undisputed that all interments in the cemetery had occurred "only by permission of T. S. *and his lineal descendants*." *Id*. (emphasis added).

At some point, descendants of Roscoe Grinestaff "placed markers around a southwest section in which members of Roscoe's family had been buried" and "[b]y this act they undertook to appropriate a specific part of the cemetery for the future use of their branch of the family, there being substantial unused ground for new graves." *Id.* at 883. T.S.'s heirs, who were owners of the tract, sought an injunction to enjoin Roscoe's descendants from appropriating a part of a private cemetery located thereon. *Id*. at 882. Roscoe's descendants asserted defenses of 1) adverse possession, and 2) dedication of the cemetery by the original owner, T.S.

The Chancellor rejected the defense of adverse possession but agreed with Roscoe's descendants "that a part of this cemetery had been dedicated to the Roscoe Grinestaff family." *Id.* at 883. The heirs of T.S. appealed to the Court of Appeals—then Kentucky's highest Court. On appeal, the Court examined whether acquiescence by T.S. and his heirs, to Roscoe and his descendants, had established the right of Roscoe's descendants to conduct future burials in the cemetery.

Additionally, the Court examined the question of whether T.S. had *dedicated* the cemetery to Roscoe and his descendants for their private use. *Id.*

The *Grinestaff* Court noted that the claim of Roscoe's descendants that T.S. had dedicated the cemetery to Roscoe and his heirs was unavailing as "dedication" referred to "the intentional appropriation of land by the owner to some proper public use" and that, "[t]here is no such thing known to the law as the dedication of land to an individual for private use." *Id.* at 883 (citation omitted). The Court further held:

> The essence of dedication is that it shall be for the use of the public at large. There may be a dedication for special uses, but it must be for the benefit of the public. Properly speaking, there can be no dedication to private uses or for a purpose bearing an interest or profit in the land, as distinguished from general public uses.

*Id.* (quoting 16 AM. JUR., *Dedication* § 5 (p. 349)). "[I]t seems settled that the right of burial in a private cemetery cannot be established or acquired by dedication." *Grinestaff*, 318 S.W.3d at 883 (citations omitted).

Judge Clay, the presiding judge in both *Grinestaff* and *Rose*, lamented his use of the word "dedication" in the prior opinion:

> In *Rose v. Rose*, 314 Ky. 761, 237 S.W.2d 80, there appears language to the effect that a graveyard may be dedicated to family use. *From the opinion it appears that this term was used in its broad sense as meaning that a certain plot had been set aside as a family graveyard.* The effect of the decision was that this burying ground had been excepted from the conveyance of a larger tract

> surrounding it.  The language used in that opinion was unfortunate (the fault lies wholly with the author of this opinion), but we cannot invoke that case in support of defendants' position.

*Grinestaff*, 318 S.W.2d at 884 (emphasis added).

*Grinestaff* clarified that *Rose* had *not* "recognized private dedication as a basis for the right of future burials to be conducted at a family cemetery." *Rose* was hardly unique in using the word "dedicate" to describe the establishment of a family cemetery where terms such as "set aside" or "set apart" might have avoided confusion and kept the concept distinct from that of a public dedication for readers.  This quandary is well-recognized:  "the appropriation of land for a family burial plot is often described as a 'dedication,' without clarity as to whether a dedication in the strict legal sense is meant or whether a family burial ground was established in a manner other than by a legal dedication."  H.D. Warren, Annotation, *Private or Family Cemeteries*, 75 A.L.R.2d 591 (1961).  As summarized in another jurisdiction:

> it has long been recognized that the owner may, without using a deed, "set apart" a portion of his land for use as a family cemetery.  *Hines v. State*, 126 Tenn. 1, 149 S.W. 1058 (1911); *Frost v. Columbia Clay Co.*, 130 S.C. 72, 124 S.E. 767 (1924); *Meadows v. Edwards*, 116 S.W.2d 831 (Tex. Civ. App. 1938); *Benn v. Hatcher*, 81 Va. 25; *Grinestaff v. Grinestaff*, Ky., 318 S.W.2d 881 (1958); *Rose v. Rose*, 314 Ky. 761, 237 S.W.2d 80 (1951); *Heiligman v. Chambers*, Okl., 338 P.2d 144, 75 A.L.R.2d 583 (1959).  Perhaps inaccurately, this has often been referred to as a "dedication."

-23-

*Stoker v. Brown*, 583 S.W.2d 765, 766 (Tenn. 1979).

And elsewhere in Kentucky law, use of the word "dedicated" in describing the establishment of a family cemetery has not been confined to *Rose*.[6] And, as with *Rose*, such an easement will include a *burial privilege* that is confined to the direct family for whom the family cemetery was set aside by a prior land holder. *Gahlinger*, 248 S.W.2d at 351.

The Maddoxes contend that *Grinestaff* held "that the owner of land where a family cemetery is located has the right to deny future burials in the family cemetery where adverse possession . . . has not been established." Appellant brief, p. 16-17. Upon careful reading of *Grinestaff*, we locate no support for such a sweeping and unqualified statement.

Under the Maddoxes' interpretation of *Grinestaff*, G.B. Rose had the right to deny Taylor and his other siblings any burial of their families in the family cemetery that G.B.'s and Taylor's ancestors had established, since the property was conveyed to him. However, *Grinestaff* contains no indication that a mere lamentable word choice had led to an incorrect result being reached in *Rose*. There is only regret expressed for use of the word "dedication" and a determination that

---

[6] "[T]he right of the relatives of deceased persons in ground *dedicated* to family burials is a mere easement and not a fee." *Gahlinger*, 248 S.W.2d at 351 (citing *Johnson* 149 S.W.2d 496; *Brunton*, 97 S.W.2d 413; *United Cemeteries Co.*, 61 S.W.2d 907; 14 C.J.S. *Cemeteries* § 20, p. 79) (emphasis added).

*Rose* could not be invoked in support of the position of the descendants of Roscoe Grinestaff. 318 S.W.2d at 884. Again, the descendants of Roscoe were merely collateral relatives and not lineal descendants of T.S., who had originally established the family cemetery. *Id*. This is likewise the case in the unpublished opinion of this Court cited by the Maddoxes in support of their interpretation of *Grinestaff*.[7]

The Maddoxes additionally assert that *Grinestaff* held "that any prior consent or license was revocable and the owner of the property had the right to deny future burials." Based upon this purported authority, "the Maddoxes have the right to deny future burials to the Brumagens despite the fact the Brumagens buried their relatives on the property for many years." Here, again, we find no support for such extrapolation from *Grinestaff* based upon our reading of that case. In fact, there is no explicit indication that the heirs of T.S. objected to or had intended to revoke the longstanding consent or license for the descendants of Roscoe to continue with future burials. Rather, the "issue presented [was] whether or not defendants have an absolute right to continue to bury their dead in this cemetery, and particularly the exclusive right to bury their dead in the section of the cemetery which they marked off shortly before this suit was filed." 318 S.W.2d at 883.

---

[7] *See Spradlin v. Spradlin*, No. 2023-CA-0606-MR, 2024 WL 501454, at *1 (Ky. App. Feb. 9, 2024) (unpublished).

-25-

The record here is sparse as to details regarding the history of the cemetery and the chain of title of the larger parcel. Nonetheless, undisputed facts of the case, including some relied upon by the Maddoxes in purported support of their defenses to the circuit court, are sufficient to establish the common-law right of the Brumagens to continue with future burials within the boundaries of the family cemetery, as recognized in *Rose*.

From the time they first answered the Complaint in this case, the Maddoxes have consistently asserted that burial rights in the family cemetery, once held by the ancestors of the Brumagens, vanished when those ancestors lost title to a fee in the land where the cemetery is situated:

> The ancestors of the [Brumagens], many years ago, failed to pay the property taxes on the cemetery and property and it was foreclosed on by Jackson County and made a part of the Deed and property that was purchased by and now solely owned by the [Maddoxes]. The [Brumagens] have no current interest in the cemetery, by deed, easement or otherwise, which would entitle them to have access to the property at their desire and to make any claim of continued rights to be buried in the cemetery.
>
> . . .
>
> Quite simply, the [Maddoxes] solely own the land and cemetery pursuant to their deed. The [Brumagens] cannot produce any deeds, easements or any other documents showing they have any ownership or rights thereto in the cemetery.
>
> . . .

> Any interest [the Brumagens] may have had in the past, if any at all, has been extinguished.

R. at 19.

The Maddoxes nowhere argue that *Rose* is inapplicable as a result of lineage. Regarding burial rights and control of the family cemetery generally, the Maddoxes have remained consistent in this position throughout the litigation, including in their arguments on appeal. However, the premise of this position—that an easement for interment may be established solely by a written instrument or adverse possession—is simply incorrect.

### The Circuit Court Did Not Commit Reversible Error When Interpreting the "Subject To" Language in the Deed

The Maddoxes argue that the circuit court committed reversible error in ruling "that the cemetery and access road were "excepted out" of the deed such that [the Maddoxes] did not own the cemetery or cemetery road[.]" Appellant brief, p. 11. This argument disputes the finding in the Order that "the wording within the [Maddoxes'] deed that the conveyance is, 'subject to,' the cemetery and access road as shown on the recorded survey plat means that the cemetery and access road are reserved and not conveyed to [the Maddoxes]." Order, p. 2.

The interpretation of a deed presents an issue of law which we review *de novo*. *See Baker v. Hines*, 406 S.W.3d 21 (Ky. App. 2013). Interpretation is controlled by the intention of the parties as gleaned from the four corners of the

deed.  *Shields v. University of Louisville Foundation, Inc.*, 536 S.W.3d 706 (Ky. App. 2017) (citing *Rhoades v. Bennett*, 307 Ky. 507, 211 S.W.2d 693 (1948); *Standard Elkhorn Coal Co. v. Bolen*, 193 Ky. 342, 236 S.W. 241 (1921); *Hicks v. Phillips*, 146 Ky. 305, 142 S.W. 394 (1912); and 28A C.J.S. *Easements* § 72 (2017)).

Our inquiry is limited.  The Order of the circuit court made no determination as to who the titleholder of the fee in the cemetery was. Appropriately so, as the question was not before it; nowhere does the record indicate that the Brumagens made any claims to quiet title in the cemetery property.  Rather, the Brumagens sought, and were granted, an Order enjoining the Maddoxes from interfering with their access to and use of the family cemetery for proper purposes.  And so, neither then is any question as to title in fee for the cemetery appropriately before this Court.

Among the Order's conclusions of law, the circuit court concluded that "[t]he words 'subject to' in a deed of conveyance denote an exception to the deed.  *Kelley v. Haas*, 262 S.W.2d 687, 688 (Ky. 1953)."  The Maddoxes argue that *Kelley* is inapplicable because it is factually distinguishable; it concerned a dispute as to a reservation of mineral rights, not rights within a cemetery.  We find this argument unpersuasive.

-28-

Case law supports the circuit court's conclusion that the words "subject to" in this deed were words of qualification and a limitation on the grant. *Kelley*, 262 S.W.2d at 688. This is further supported in the deed by the reference to and attachment of the survey clearly indicating the presence and location of the cemetery and access road. "[W]hen 'subject to' language is coupled with the incorporation of the certificate of survey into an instrument of conveyance, however, an express easement by reservation may be created." 28A C.J.S. *Easements* § 71.

The question in *Kelley* was whether the phrase "subject to" was limited to an exception to conveyance that acknowledged an interest in the property that had previously been attained by third parties, or whether the clause could also "create an exception or reservation in favor of a grantor." 262 S.W.2d at 688. The *Kelley* Court determined that the words "subject to" could *also* create a reservation in favor of a grantor. *Id*. However, in doing so, that Court was acknowledging the "subject to" clause was typically used to indicate that the warranty of the interest transferred is made "subject to" an interest owned by a third party. *See id*. ("The question is simply whether the quoted language

constituted an exception of all the mineral rights, *or only of such as had previously been conveyed to others*[.]") (emphasis added).[8]

The Maddoxes argue that the "subject to" language in the deed, along with the depiction of the boundaries of the cemetery and road in the referenced and attached survey plat, is an indication only that "the Maddoxes were conveyed the cemetery and access road, but there were rights by others to use the cemetery and access road." Appellant brief, p. 12. Throughout the underlying proceedings, as well as on appeal, the Maddoxes insist that an assertion of a right of burial is no less than a claim to ownership of the land in fee. In their argument here, the Maddoxes argue that the deed's language could not provide the Brumagens with "title to the cemetery for future burials . . . because there was no language in the conveyance that it was also "subject to" future burials in the cemetery." *Id*. at 15.

In their Reply brief, they argue the presence of the language concerning the cemetery and the attached plat, "is a difference without a legal significance. In Kentucky, whether the deed to the Maddoxes referred to the cemetery and access road or not, there is an easement implied by law for relatives

---

[8] "[S]ome draftsmen, mistaking ['subject to'] for a reservation clause, have used it as a mechanism for retaining an interest in the grantor." Ernest E. Smith, *The 'Subject To' Clause*, 30 ROCKY MOUNTAIN MIN. L. INST. § 15.01 (1984) (citing *Kelley*, 262 S.W.2d at 687); *see also* 26A C.J.S. *Deeds* § 356 (2026) ("Where title to a part of the property covered by the general description of the deed is already in a third person so that an exception thereof will not attempt to create title in a stranger to the deed, but merely exclude from its operation that which one not a party thereto already has, an exception may properly and validly be made recognizing and confirming such third person's rights.")

to visit their dead in a private cemetery on private property, and access cannot be lawfully denied. Thus the 'subject to' language and the Plat Map did nothing to increase the rights of the Brumagens to visit their deceased." Reply brief, p. 2.

The Maddoxes assert that "if 'subject to' meant that the cemetery and access road were excepted and reserved, then they would belong to the Grantor, the Estate of Mary King Abrams, and not the Brumagens." Appellant brief, p. 13. Regardless of whether this contention is correct, which we need not determine today, the Maddoxes make no case for how this would authorize them to interfere with the use of the cemetery and access road by the Brumagens.

Moreover, each of the Maddoxes' arguments regarding the deed would be applicable to the Abrams Estate. And, by these arguments, the deed demonstrated no intent by the parties for the Abrams Estate to reserve or except from conveyance *any* rights as to the Brumagen, Abrams, Hayes Cemetery, outside those that the Maddoxes would concede they possess by common law.

Therefore, we find the argument that the words "subject to" are without legal significance here to be unpersuasive. Whether the words indicate the intent of the parties for the Estate to retain title in the cemetery, or merely an easement, is unnecessary for us to determine. Neither was this the question before the circuit court. The question the Maddoxes put before the circuit court was whether the Estate had conveyed sufficient property rights as to the cemetery and

access road to interfere with the Brumagens' use of the cemetery. The circuit court did not err in concluding that the deed demonstrated no such conveyance.

As stated in *Kelley*:

[w]e have, in the deed before us, the phrase, '*subject to . . .* all mineral rights.' *To say that this was not effective to except or reserve* all mineral rights *would be to attach an unwarranted importance to the technicalities of the language of conveyancing.* It is our opinion that no mineral rights passed to the grantees under this deed.

262 S.W.2d at 689 (emphasis added).

Throughout all proceedings in this case, the Maddoxes argued the private cemetery was conveyed to them, by deed, in fee simple, and that this conveyance vested them with far-reaching property rights. On appeal, the Maddoxes prudently concede that the Brumagens have an easement for ingress and egress. They do not challenge many aspects of the circuit court's Order, nor do they appeal the prior order that they provide Bernie Brumagen with a key to the locked gate.

However, for much of the litigation before the circuit court, the Maddoxes have characterized their rights gained through the alleged conveyance in terms which would resemble a fee simple *absolute* in the cemetery. In their answer to the Complaint, the Maddoxes contended that the Brumagens lost *all* rights as to the family cemetery when their ancestors lost title in fee to the property. This included the right to simply *visit* the gravesites of relatives, which the Maddoxes

contended they had consented to only from a sense of charity rather than legal obligation:

> The [Maddoxes] have accommodated the [Brumagens] with reasonable safeguards to have access to the cemetery so they can visit their deceased relatives. The [Maddoxes] did not have to do this but did based on general principles of human decency. Now the [Brumagens] have filed this frivolous and baseless lawsuit herein asserting a fictitious interest in the cemetery that they do not possess. Even asserting a continued interest to be buried there when they clearly do not own the cemetery or land around, do not own any burial plots, nor do they have any easement/s thereto that can be enforced. Any interest they may have had in the past, if any at all, has been extinguished.

R. at 19-20.

In their own motion for summary judgment, the Maddoxes argued that "the [Brumagens] don't even have an easement [for ingress and egress] but even if they did, the Defendants have a right to put up barriers to protect the graves and cemetery, a fence around it, or whatever they choose if there is ingress and egress available." By the time of their response to the Brumagens' motion for summary judgment, the Maddoxes had modified their position with the limited concession that "the only interest that the [Brumagens] have a cognizable legal right to is reasonable ingress and egress to visit their loved ones who are buried at the cemetery, which the [Circuit] Court has previously and generously allowed them by an Order of the Court." R. at 79.

-33-

At various points, the Maddoxes had argued to the circuit court that the deed conveyed *all* property rights to the cemetery, including rights that their predecessor in title could not have possessed, such as the right to interfere with ingress and egress. We cannot say the circuit court erred, as a matter of law, in finding that the deed had not conveyed ownership in the nature of that alleged by the Maddoxes.

**CONCLUSION**

We discern no error in the circuit court's conclusion that there were no genuine issues as to any material fact, and that the Brumagens were entitled to judgment as a matter of law. For these reasons, the summary judgment of the Jackson Circuit Court is affirmed.

JONES, A., JUDGE, CONCURS.

THOMPSON, CHIEF JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, CHIEF JUDGE, DISSENTING: I respectfully dissent from the majority Opinion. No Kentucky statute establishes a right to conduct burials on property owned by others without their consent. We therefore turn to the common law for the issues raised in this appeal. *See* KRS 446.082(2), stating that, "[i]n the absence of a constitutional section or a statute on a given matter, Kentucky shall be deemed to have adopted the common law." Here, and for the reasons stated below, I would hold that the common law amply demonstrates that the "subject to"

-34-

language contained in Appellants' deed did not create or otherwise recognize a perpetual right of Appellees to use Appellants' cemetery for future burials.

*Grinestaff*, cited by the majority, is instructive on this issue. In *Grinestaff*, T.S. Grinestaff owned a parcel of real property in Kentucky, upon which he allowed his brother, Roscoe Grinestaff, to bury Roscoe's deceased child. The burial site was fenced off, and over the years it became a family cemetery where the relatives of both T.S. and Roscoe were buried, as well as some non-relatives. The agreement between T.S. and Roscoe as to the usage of the cemetery, if any, is lost to history. With the exception of one burial, all others—numbering about 41—were conducted with T.S.'s permission.

Later, the parcel was sold to Jack Grinestaff and others. When Roscoe's descendants sought not only to place markers in the cemetery to reserve an area for their future use, but to expand the cemetery's border, Jack sought an injunction. Roscoe's descendants defended on two grounds: 1) adverse possession, and 2) dedication of the cemetery by the original owner, T.S. In this context, dedication referred to "the intentional appropriation of land by the owner to some proper public use." *Grinestaff*, 318 S.W.2d at 883 (citation omitted).

The Chancellor declined to issue the injunction, the effect of which was to recognize in Roscoe's descendants the right to reserve a portion of the cemetery for future burials. The matter was appealed to the Court of Appeals—

then Kentucky's highest Court. On appeal, the issue centered on whether T.S., through his actions and acquiescence to Roscoe and others, had established the right of Roscoe's descendants to conduct future burials in the cemetery. Specifically, the question was whether T.S. had dedicated the cemetery to the private use of Roscoe's descendants.

Upon considering that question, this Court determined that, "***[t]here is no such thing known to the law as the dedication of land to an individual for private use***." *Id*. (emphasis added) (citation omitted). The Court further held:

> The essence of dedication is that it shall be for the use of the public at large. There may be a dedication for special uses, but it must be for the benefit of the public. Properly speaking, there can be no dedication to private uses or for a purpose bearing an interest or profit in the land, as distinguished from general public uses.

*Id.* (quoting 16 AM. JUR., *Dedication* §5 (p. 349)). "[I]t seems settled that the right of burial in a private cemetery cannot be established or acquired by dedication." *Id.* (citations omitted).

Based on this reasoning, the *Grinestaff* Court concluded that T.S. could not have dedicated the cemetery to the private use of Roscoe's descendants. Rather, such right or privilege could only come via ongoing permissive use, or a written deed or contract granting the right to Roscoe's descendants. The Court determined that no deed or contract having been entered into by the parties,

-36-

Roscoe's descendants had no right to conduct future burials absent the permissive use of the landowner, Jack Grinestaff.[9]

Applying these principles to the matter before us, we see that Appellees would have the right to future burials at the cemetery only through 1) a public dedication of the cemetery, which would benefit all members of the general public; 2) a deed or contract conveying that use to Appellees; or, 3) permissive use via Appellants' acquiescence. *Grinestaff*, *supra.*

This is the analysis which the majority should apply. Appellees have not alleged, nor does the record so demonstrate, a public dedication of the cemetery for the benefit of all members of the general public. Similarly, there is no deed or contract conveying that use to Appellees. And finally, Appellants have not granted to Appellees permission to conduct future burials, which Appellees do not contest. These facts are uncontroverted.

The Jackson Circuit Court cited *Kelley v. Haas*, 262 S.W.2d 687 (Ky. 1953), in concluding that because the words "subject to" in a deed or conveyance denote an exception to the deed, it follows that this exception in Appellants' deed necessarily includes Appellees' perpetual right to conduct burials at the cemetery. I do not agree. Kentucky case law distinguishes the right of family members to

---

[9] *Grinestaff* implicitly overruled *Rose v. Rose*, 314 Ky. 761, 762, 237 S.W.2d 80, 80 (1951), which recognized private dedication as a basis for the right of future burials to be conducted at a family cemetery.

visit existing graves from the right of persons to conduct future burials there in perpetuity. These are separate rights. The former cannot be extinguished, whereas the latter must be grounded only on a public dedication, deed, contract, or permissive use per *Grinestaff*.

> Under Kentucky law, the right of a relative to visit the graves of deceased relatives has been classified as an easement. The right of ingress and egress may be protected by an equity court. Whether the right of an heir to visit is considered an easement, license or privilege, it cannot be extinguished by the subservient fee owner through conveyance to another.

*Commonwealth, Dep't of Fish & Wildlife Resources v. Garner*, 896 S.W.2d 10, 13 (Ky. 1995) (citations omitted). This panel should conclude that the words "subject to" in Appellants' deed referenced the right of Appellees to visit the graves of their relatives, which was not extinguished by the parcel's conveyance to Appellants. The "subject to" language did not create in Appellees a right to perpetual future burials, which requires proof of one of the elements set out in *Grinestaff*. Those elements are wholly absent.

Further, Appellants note that the cemetery has no physical fence, and that the cemetery plat has no metes and bounds. With the majority Opinion allowing for unlimited burials of unlimited future generations yet to be born, all without the consent of the actual title holders, one must consider the real

possibility that the cemetery will expand without limitation on Appellants' parcel. This is a result that the law simply does not allow.

Lastly is the question of whether the circuit court properly found that the cemetery and access road "are reserved and not conveyed to the defendants [Appellants]."[10] If the circuit court is correct that Appellants do not own the cemetery and access road, then who does own the cemetery? It cannot be the Estate of Mary King Abrams, which transferred the parcel to Appellants by way of a properly recorded deed. "It is axiomatic that within the common law property system all land must be owned by someone." *Brusco Towboat Co. v. Or., By and Through Straub*, 567 P.2d 1037, 1043 (Or. App. 1977).[11] Further, abandoned property escheats to the Commonwealth. KRS 393.020.

Here, the cemetery and access road were not abandoned, nor are they owned by the Estate of Mary King Abrams. Rather, the chain of title, deed, and plat conclusively demonstrate that the Estate of Mary King Abrams conveyed the parcel, including the cemetery and access road, to Appellants "subject to" the right of family members to visit the graves per *Garner, supra.* The circuit court's ruling

---

[10] Finding of Fact No. 7.

[11] Extra-jurisdictional case law is not binding on Kentucky courts, but may be cited as persuasive authority. *See Nissan v. Hurt*, No. 2010-CA-001555-MR, 2013 WL 5592372, at *3 (Ky. App. Oct. 11, 2013).

that no one owns the cemetery leads to a nonsensical result. On this basis alone, we should reverse.

Based on *Grinestaff*, there is no basis for concluding that the "subject to" language contained in Appellants' deed created or otherwise recognized a perpetual right of Appellees to use Appellants' cemetery for future burials. Again, such right must be established, if at all, by a public dedication, deed, contract, or permissive use. *Grinestaff*, *supra*. No proof of a public dedication, deed, contract, or permissive use in favor of Appellees is found in the record. As such, this panel should conclude that Appellees were not entitled to a judgment as a matter of law.[12] *Scifres v. Kraft*, 916 S.W.2d 779 (Ky. App. 1996). I would reverse the summary judgment of the Jackson Circuit Court in favor of Appellees, and remand the matter for consideration of Appellants' motion for summary judgment.

BRIEFS FOR APPELLANTS:

Marcia A. Smith
Corbin, Kentucky

BRIEF FOR APPELLEES:

John T. Aubrey
Mariah J. Aubrey
Manchester, Kentucky

---

[12] While we empathize with Appellee Bernie Brumagen's desire to be buried next to his wife, nothing in the record or the law grants him this right or privilege absent the acquiescence of Appellants. We should constrain our ruling to the extant property law, which balances the property rights of landowners with the privilege of third parties to visit the graves of relatives.